# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSE MISAEL JAIMES,
        Petitioner,

v.                                         Case No. 07C0543

ROBERT HUMPHREYS,
        Respondent.

## DECISION AND ORDER

Petitioner Jose Misael Jaimes seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his state court conviction after a jury trial of making two deliveries of cocaine to an undercover police officer for which he received fifteen years in prison. Petitioner argues (1) that his Fifth Amendment right to be free from being put in jeopardy twice was violated because the prosecutor provoked a mistrial; (2) that the prosecutor violated his rights under the Fifth Amendment by commenting on his failure to testify in his rebuttal argument; and (3) that the prosecutor violated his right to due process by misstating the law and facts in his rebuttal argument.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On the day before petitioner's first trial, the state filed a motion to introduce other acts evidence showing that petitioner had previously participated in uncharged cocaine deals with the same undercover officer, Antonio Matos, who testified at trial. The trial court denied the motion as untimely. Matos was the state's first witness at trial, and early in his testimony, he and the prosecutor engaged in the following colloquy:

> Q. And what else took place at that point in terms of the drugs and the weight and what the defendant was doing?

> A. Oh, once I – I retrieved those items from the younger individual [codefendant Octavio Velazquez], I turned to – to the defendant's attention and I asked him if it [the cocaine] was all there, if the – if the weight was correct because I complained that the last time, he had shorted me.

State v. Jaimes, 292 Wis. 2d 656, 661 (Ct. App. 2006).

The state court of appeals recounted what happened at that point:

> Jaimes's counsel immediately objected and outside the presence of the jury moved for a mistrial on the ground that Matos had improperly introduced other acts evidence. In response to the motion, the prosecutor said that he had instructed Matos not to mention uncharged drug sales and suggested the court could correct the error by issuing a cautionary instruction to the jury. Counsel for Jaimes opposed the prosecutor's suggestion, arguing that Matos's reference to an uncharged drug deal created the impression that Jaimes is a drug dealer and a cautionary instruction could not erase the prejudice to Jaimes. The trial court agreed with Jaimes's counsel, granted the mistrial, and rescheduled the case for trial with a caution to the State that it would not allow any other wrongful acts evidence.
>
> Before retrial, Jaimes moved for dismissal of the two deliveries of cocaine charges on double jeopardy grounds. The trial court denied the motion, finding that Matos's testimony was not an intentional violation of its order, but rather a comment that flowed unfortunately from the factual setting. It also concluded:
>
>> The court does not find that the prosecutor's actions, and I don't think the question actually would – should have prompted the answer that was given. So I don't find the action was intentional in the sense of a culpable state of mind in the nature of an awareness that his activity would be prejudicial to the defendant; and two, the prosecutor's action was not designed either to create another chance to convict – since we're at the very beginning of this trial – to provoke a mistrial in order to get another kick at the cat because the first trial was going badly, or to prejudice the defendant's rights to successfully complete the criminal trial, criminal confrontation at the first trial, or to harass him with any subsequent prosecution.
>
> Before the jury selection of the second trial, Jaimes renewed his motion to dismiss the charges on the basis of double jeopardy, and the court again denied the motion concluding that the prosecutor had not overreached at the first trial as that trial had barely begun and it was the State's first

2

witness.

Id. at 661-62.

At trial, petitioner's counsel argued to the jury that:

it should not believe Matos's testimony regarding the drug buys because Matos was a "professional liar" in his role as an undercover officer. Defense counsel also questioned the lack of testimony at trial from Jaimes's collaborators, Velazquez and Albiter. In rebuttal, the prosecutor replied to the defense counsel's contentions about the lack of testimony from Velazquez and Albiter, stating:

> So when [defense counsel] raises a question, well, we've got all these MIA's – well you know, you heard the instruction as party to a crime. Anyone else who was involved in setting up any of these deals or participating in any way, either by aiding and abetting or conspiring, they're a potential defendant. So is Jose Albiter going to come to court and say, oh, yeah, I delivered.

Id. at 667-68.

Defense counsel objected to this statement arguing it "assumes facts not in evidence." The trial court overruled the objection and the prosecutor continued:

> So Jose Albiter isn't going to walk into court and say, oh, by the way, I delivered a hundred grams of cocaine, you know, and waive his Fifth Amendment right and do all that at the snap of a finger because he'd be implicating himself in a crime. The same thing is true of Octavio Velazquez. My God, they have the same rights that he does.
>
> And if he was interested in presenting testimony exonerating him, he's got subpoena power the same way I do to ask people to come here – Mr. Velazquez and Mr. Albiter . . . if these guys are so critical, but, no. You know, focus on the evidence.

Id. at 668.

Petitioner objected to the latter statement on the ground that it constituted an improper comment on his right not to testify. The trial court overruled the objection.

3

Petitioner also asserted that the prosecutor misstated both the law and the facts regarding the absence of Velazquez and Albiter. The trial court also overruled that objection.

Subsequently, the state court of appeals addressed both issues. Concerning petitioner's first objection, the court stated:

> Thus, for a prosecutor's comment to constitute an improper reference to the defendant's failure to testify, three factors must be present: (1) the comment must constitute a reference to the defendant's failure to testify; (2) the comment must propose that the failure to testify demonstrates guilt; and (3) the comment must not be a fair response to a defense argument. See id.
>
> Here, the prosecutor's comment was not improper because it does not satisfy the second and third requirement from Robinson. To begin, the prosecutor's rebuttal argument satisfied the first requirement because the comment referenced Jaimes's failure to testify. Again, the prosecutor stated:
>
>> So [alleged collaborator] Jose Albiter isn't going to walk into court . . . and waive his Fifth Amendment right, and . . . implicat[e] himself in a crime. The same thing is true of [alleged collaborator] Octavio Velazquez. My God, they have the same rights that he does.
>
> Whether a prosecutor's remarks reference a defendant's failure to testify is based on "'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v. Lindvig, 205 Wis.2d 100, 107, (Ct. App.1996) (quoting State v. Johnson, 121 Wis.2d 237, 246 (Ct. App.1984)). Because it is likely the prosecutor's comment was manifestly intended or the jury would take it to be a comment on the Jaimes's failure to testify, the first prong has been satisfied.
>
> The prosecutor's comment, however, does not satisfy the second Robinson prong because the prosecutor did not state or intimate that Jaimes's failure to testify indicated guilt. The prosecutor simply identified the right against self-incrimination as a right available to anyone accused of a crime. Along those lines, the trial court stated in its final instructions: "A defendant in a criminal case has the absolute right not to testify." Further, the Supreme Court has noted that courts should not assign the most damning conclusion to a prosecutor's remarks stating:
>
>> [A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging

4

> meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.
>
> Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). Thus, the second prong is not satisfied.
>
> Furthermore, the prosecutor's comment does not satisfy the third Robinson requirement that the comment must not be a fair response to a defense argument. Rather, the prosecutor's comment was a fair response to the defense counsel's argument that failure on the part of alleged collaborators Velazquez and Albiter to testify should be held against the State. Specifically, defense counsel prompted jurors to speculate that Velazquez and Albiter did not testify because they would not corroborate the accusations of the undercover officer. In response, the prosecutor fairly suggested that the pair had the right not to testify in accordance with their Fifth Amendment right against self-incrimination. It has been held that "'when a prosecutor's comments, fairly viewed, are susceptible to two plausible meanings, one of which is unexceptionable and one of which is forbidden, context frequently determines meaning.'" United States v. Newton, 327 F.3d 17, 27 (1st Cir. 2003).

Id. at 669-71 (internal citations omitted).

With respect to petitioner's second objection to the prosecutor's rebuttal, the court of appeals ruled as follows:

> Jaimes also asserts that the prosecutor misstated both the law and fact regarding the absence from trial of codefendants Octavio Velazquez and Jose Luis Albiter. First, Jaimes argues that the prosecutor made a legally false claim when stating that the State "did not have the means to compel Albiter, Velazquez or anyone else to testify." Jaimes suggests prosecutors can "grant use immunity and com[pel] witnesses to testify accordingly." Jaimes's assertion is both factually incorrect and does not fully explain the legal standards surrounding "use immunity."
>
> First, the prosecutor did not state that he lacked the ability to compel Arbiter or Velazquez to testify. The prosecutor simply stated that Jaimes has "got subpoena power the same way I do to ask people to come here." Thus, the prosecutor was pointing to the ability of both the State and Jaimes to subpoena witnesses. See Elam v. State, 50 Wis.2d 383, 389 (1971). It has been held previously that "it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, 'particularly when done in response to a defendant's argument about the prosecutor's

5

> failure to call a specific witness.'" United States v. Hernandez, 145 F.3d 1433, 1439 (11th Cir.1998).
>
> Although it is true that the State, unlike a defendant, can offer "use immunity" to a prospective witness for testimony under Wis. Stat. § 927.08(1)(a), the prosecutor cannot grant use immunity. See Elam, 50 wis. 2d at 393. Instead, it is up to the trial court, in its discretion, to grant immunity to a prospective witness on the motion of the prosecutor. See State v. Jones, 217 Wis. 2d 57, 63 (Ct. App. 1988). Also, at the risk of contempt of court, a witness may still elect not to testify. Wis. Stat. § 972.08(2).
>
> Further, Jaimes alleges that the prosecutor stated "that Mr. Albiter was not testifying because Mr. Albiter intended to take the Fifth [Amendment]" and that this statement was factually incorrect. However, the prosecutor was simply noting that if called to testify, Albiter could invoke his Fifth Amendment privilege to avoid implicating himself. Simply put, the prosecutor was correctly suggesting that most witnesses do not volunteer to provide self-incriminating testimony without protection that the evidence will not be used against the witness.

Id. at 671-72 (internal citations omitted).

Petitioner asked the state supreme court to review his case, but the court declined. Subsequently, petitioner sought habeas review in this court.

## II. HABEAS STANDARD

A petition for a writ of habeas corpus under § 2254 raises the question of whether a state is holding the petitioner in custody unconstitutionally. However, even if a petitioner's custody offends the Constitution, Congress has circumscribed the authority of federal courts to grant the writ. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may issue the writ only if the decision of the last state court to examine the merits of the petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

6

determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). In assessing the reasonableness of the state court's decision, the federal court must assume that the state courts' factual determinations are correct unless the defendant rebuts them with clear and convincing evidence. § 2254(e)(1).

An "unreasonable application of Supreme Court precedent" occurs when "the state court identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A state court unreasonably determines the facts of a case if it fails to consider key aspects of the record, Miller-El v. Cockrell, 537 U.S. 322, 340, 346-47 (2003), if the record does not support its determination, Taylor v. Maddox, 366 F.3d 992, 1008 (9th Cir. 2004), if it makes an unreasonable credibility determination, Miller-El, 537 U.S. at 340, or if it relies on the testimony of an individual who lacked personal knowledge of the facts, Bui v. Haley, 321 F.3d 1304, 1315-16 (11th Cir. 2003). A habeas court "may no more uphold such a factual determination than [it] may set aside a reasonable state-court fact-finding." Taylor, 366 F.3d at 1008.

### III. DISCUSSION

**A.    Double Jeopardy**

Petitioner argues that the state was precluded by the Double Jeopardy clause of the Fifth Amendment from retrying him after his first trial ended in a mistrial. The Double Jeopardy clause protects a criminal defendant from repeated prosecutions for the same

7

offense. Oregon v. Kennedy, 456 U.S. 667, 671 (1982). When a trial ends in a mistrial declared at the behest of the defendant, the state may generally retry the defendant. Id. at 673. However, even where the defendant moves for a mistrial, the Double Jeopardy Clause may bar retrial where the prosecutor intentionally engaged in conduct designed "to provoke the defendant into moving for a mistrial." Id. at 679.

In the present case, the trial court found as a factual matter that the prosecutor did not intentionally attempt to goad petitioner into moving for a mistrial. Jaimes, 292 Wis. 2d at 664. The state court of appeals affirmed the trial court's finding. Petitioner contends that this factual finding was unreasonable. I disagree. The record indicates that the prosecutor advised Matos not to mention any uncharged conduct that petitioner might have engaged in, but Matos inadvertently blurted out information about petitioner's prior conduct. Nothing in the record suggests that the prosecutor colluded with Matos to provoke a mistrial or that Matos tried to provoke one on his own.[1] The trial had barely started, and nothing in the record suggests that the prosecutor anticipated that it would go badly. Finally, the prosecutor opposed petitioner's motion for a mistrial based on Matos's remarks.

**B.      Prosecutor Comment Relating to Defendant Not Testifying**

Petitioner argues that the prosecutor improperly commented on his failure to testify. For a prosecutor's comment to constitute an improper reference to the defendant's failure to testify, the comment must refer to the failure, suggest that the failure demonstrates guilt and not be a fair response to a defense argument. United States v. Robinson, 485 U.S.

---

[1]Petitioner asserts that the prosecutor hoped to delay the trial in order to receive a crime lab report. However, petitioner's assertion of a conceivable motivation for the prosecutor to provoke a motion for a mistrial is not sufficient to overcome the state court's factual finding that the prosecutor did not intentionally provoke a mistrial.

8

25, 34 (1988). The question is whether in rejecting petitioner's contention that the prosecutor improperly commented on petitioner's not testifying, the court of appeals unreasonably applied Robinson. I conclude that it did not. Although the prosecutor's statement that Albiter and Velazquez had the same right that petitioner had, i.e., the right not to testify, can reasonably be construed as a comment on petitioner's failure to testify, it does not necessarily lead to the inference that petitioner was guilty. Thus, the court of appeals's conclusion that the prosecutor neither stated or intimated that petitioner's failure to testify indicated guilt was not unreasonable. Further, the court of appeals's view that the prosecutor merely made clear that all persons accused of crimes have a right not to testify was reasonable. Finally, the court of appeals's conclusion that the prosecutor's comment was a fair response to petitioner's counsel's argument that the state's failure to call Albiter and Velazquez as witnesses should be held against it was also reasonable. Petitioner's counsel clearly provoked the prosecutor's response by suggesting to the jurors that they should infer from the absence of Albiter and Velazquez that they would not have corroborated Matos's story.

Even if, in concluding that the prosecutor's comment was not unlawful, the court of appeals unreasonably applied Robinson, I cannot conclude that the comment "had substantial and injurious effect or influence in determining the jury's verdict" as I must in order to grant habeas relief to petitioner. Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). The evidence against petitioner was overwhelming. It included the testimony of a number of witnesses as well as a videotape identifying petitioner as a participant in the drug deals. Further, the trial court instructed the jury that petitioner had an absolute right not to testify and that counsels' remarks during closing arguments were not evidence. For this reason

9

also, I will reject petitioner's argument.

**C.     Misstatements**

Petitioner also argues that the prosecutor violated his right to due process by making misstatements in his rebuttal. First, petitioner contends that the prosecutor misstated the law regarding the parties' ability to subpoena witnesses. I conclude that the court of appeals's determination that the prosecutor did not misstate the law as to this issue was not unreasonable. It was reasonable for the court to conclude that the prosecutor did not tell the jury that he did not have the ability to offer use immunity to witnesses nor, as the court of appeals indicated, does the offer of use immunity always mean that a witness will testify when a prosecutor subpoenas him. Further, the court of appeals's conclusion that the prosecutor was merely pointing out that the petitioner as well as the state could subpoena witnesses was also reasonable.

Second, petitioner asserts that the prosecutor misstated facts when he implied that Albiter and Velazquez would not testify for Fifth Amendment reasons. Petitioner points to a letter from Albiter's attorney stating that the prosecutor told her that "Mr. Albiter's testimony would not be needed at the second trial and no arrangements were made for Mr. Albiter to be present." (Answer Ex. B App. D.) The state court of appeals did not address the letter, but stated that the prosecutor did not argue that Albiter had refused to testify. Rather, "the prosecutor was simply noting that if called to testify, Albiter could invoke his Fifth Amendment privilege to avoid implicating himself." Jaimes, 292 Wis. 2d at 673. This may be true, but the prosecutor's statements were at least arguably misleading. However, it was not unreasonable for the state court to (implicitly) find that the prosecutor's statements did not so infect the trial with unfairness that he violated petitioner's right to due

process. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). The prosecutor referred to the witnesses' Fifth Amendment rights in response to petitioner's own argument. Further, petitioner has never argued that, in fact, Albiter or Velazquez would have testified or that, if they did testify, they would have testified to anything other than the prosecutor's version of the facts. Also, as stated, the court told the jury that counsels' remarks during closing arguments were not evidence. As such, even though the prosecutor's statements may have been inappropriate, they did not amount to a due process violation.

### IV. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that petitioner's application for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28 day of April, 2008.

/s_____
LYNN ADELMAN
District Judge